# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **MAGAN WALLACE** | **CASE NO. 2:19-CV-00649** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PERFORMANCE CONTRACTORS INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 21] filed by defendant Performance Contractors, Inc. in response to the employment discrimination suit brought by Magan Wallace. Wallace opposes the motion. Doc. 30.

### I.
### BACKGROUND

This suit arises from Wallace's employment with Performance from December 2016 to September 2017. Wallace was originally hired as a Support Craft Firewatch at the Westlake facility in Sulphur, Louisiana, at a pay rate of $20/hour. Doc. 21, att. 3, pp. 2–3, 14. The position is an entry-level one. Doc. 30, att. 4, p. 6. Wallace was laid off in April 2017 pursuant to a reduction in force but rehired later that month as a Craftsman Helper Ironworker at the Sasol facility in Sulphur, in the Ethylene Oxide and Ethylene Glycol pipe rack area, at a pay rate of $22/hour. Doc. 21, att. 3, pp. 3, 16; doc. 30, att. 11. This position was considered a promotion and could sometimes involve light mechanical duties. Doc. 30, att. 4, pp. 7, 10–11. Wallace, however, states that her duties chiefly involved housekeeping tasks such as collecting water coolers, sweeping, and keeping work areas

1

organized and free of hazards. Doc. 30, att. 2, p. 10. She further maintains that she was denied opportunities for on-site training that would help her advance her career. *See id.* at 38. By Wallace's account, she also suffered pervasive sexual harassment at the Sasol site in the form of sexual comments from supervisors as well as an incident of one coworker rubbing her shoulders and a supervisor sending her a picture of his genitals. *Id.* at 15–21.

Wallace reported incidents involving one coworker to her supervisors in June 2017, and Human Resources began an investigation. Doc. 30, att. 4, pp. 16–17. Before the investigation was complete, however, the subject employee quit. *Id.* Meanwhile, Wallace was suspended without pay for three days on August 16, 2017, for failing to call in before missing work. Doc. 30, att. 14. Her fiancé and coworker, Chris Tapley, was fired for absenteeism at the same time but had his termination reversed after he called the company's Human Resources office. Doc. 30, att. 3, pp. 5–6. Wallace also attempted to contact Human Resources but testified that she received no response. Doc. 30, att. 2, pp. 25–26. She then mailed a letter of resignation to the company on August 23, 2017, and was formally terminated on September 13, 2017, for "no call/no show." *Id.* at 70; doc. 30, att. 12.

Wallace filed a charge of discrimination with the EEOC, complaining of sex discrimination, hostile work environment, retaliation, and constructive discharge. Doc. 1, att. 3. The EEOC made a no-cause determination and issued a dismissal and notice of suit rights. *Id.* Wallace then timely filed the instant suit, raising claims of sex discrimination, sexual harassment/hostile work environment, and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.* Performance now moves for summary judgment on all of Wallace's claims. Doc. 20.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

# III.
## LAW & APPLICATION

A plaintiff may prove intentional retaliation or discrimination under Title VII using either direct or circumstantial evidence. When circumstantial evidence is involved, the court uses the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze the claim. Under that framework, the plaintiff must first establish a prima facie case by showing, in the case of a discrimination claim, that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged or otherwise suffered adverse employment action; and (4) she was treated less favorably than members outside of her protected class or was replaced by a member outside of that class. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 363 (5th Cir. 2004). If the plaintiff makes this showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory motive for its action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). At the final stage, the burden shifts back to plaintiff to show that the employer's explanation is not true and is instead a pretext for the real discriminatory and/or retaliatory purpose. *Id.*

### A. Sex Discrimination Claim

Wallace first claims that she was discriminated against on the basis of sex when Performance denied her work and training opportunities that were available to her male colleagues. In support of her claim, she alleges that she was "prohibited by management officials . . . from performing any duties other than sweeping and refilling the water coolers, which are predominantly [lower-ranking] Laborer duties." Doc. 30, pp. 5–7. Specifically,

4

she alleges that general foreman Charles Casey prohibited her from performing helper tasks on the "rack" that would allow her to hone her skills because, according to Casey, she had "tits and an ass" and therefore could not wear the required harness. *Id.* at 6–7. She also asserts that it was "common knowledge across . . . the site that the way to advance within the company was to work in the field, learn new things, practice them, and present yourself doing those things to management." *Id.* at 5 (internal quotations omitted). Finally, based on Casey's comments, she maintains that this is a case of direct evidence of discrimination and therefore not subject to *McDonnell-Douglas*'s burden-shifting framework. Performance asserts that this claim is limited to circumstantial evidence, which does not support any discriminatory motive in light of plaintiff's own testimony that she believed Casey was joking, and that plaintiff cannot meet her burden because there was no adverse employment action.

Regardless of whether this claim is governed by *McDonnell-Douglas*, plaintiff can only prevail on her claim of discrimination if she shows an adverse employment action. *See, e.g.*, *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 992 (5th Cir. 2005) ("If an employee presents credible direct evidence that discriminatory animus at least in part motivated . . . the adverse employment action," then the burden shifts to the employer to prove that the decision would have been made even without the discriminatory animus.) Here that action is the alleged limitation Performance placed on Wallace's opportunities to train and advance within her position because of her sex.

Title VII was designed to address only "*ultimate* employment decisions, [rather than] every decision made by employers that arguably might have some tangential effect

5

upon those decisions." *Thompson v. City of Waco*, 764 F.3d 500, 503–04 (5th Cir. 2014) (emphasis in original). A denial of training is only actionable under Title VII if the plaintiff produces "significant evidence" showing that it would tend to affect her employment status or benefits. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406–07 (5th Cir. 1999). In this context, the Fifth Circuit has consistently rejected "failure to train" claims where there is "only tangential evidence of a potential effect on compensation." *Brooks v. Firestone Polymers, LLC*, 640 F. App'x 393, 397 (5th Cir. 2016) (collecting cases).

Here Wallace cites only her own testimony that the way to advance at Performance was to learn and practice new skills. Doc. 30, att. 2, p. 36. She provides no basis for this information other than "common knowledge" at the site and no evidence relating to specific comparators who advanced as a result of their wider range of skills or desired promotions that she was denied.[1] Her evidence amounts to nothing more than speculation that any limitations on her duties impacted her compensation or job title. Accordingly, these allegations do not give rise to a claim under Title VII.

**B. Sexual Harassment Claim**

Sexual harassment is a form of illegal employment discrimination. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012). Sexual harassment under Title VII generally falls into two categories: (1) a "quid pro quo" claim and (2) allegations that a supervisor's sexual harassment created a "hostile work environment." *See, e.g.*, *Casiano v.*

---

[1] In her response brief Wallace maintains that the alleged limitations on her duties amounted to a de facto demotion. Doc. 30, p. 23. As Performance shows, however, the written job description for a helper includes the cleaning tasks that Wallace complains of being asked to perform. *See* doc. 21, att. 3, p. 16. In the absence of more concrete evidence, such as a reduction in pay or the denial of a promotion, Wallace's testimony is insufficient to establish that she suffered any adverse employment action.

6

*AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000). To establish a prima facie hostile work environment claim, as alleged here, the plaintiff must show that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on her race, gender, etc.; (4) the harassment was severe enough to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the discrimination but failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

When no tangible employment action is taken against the plaintiff employee and the harassment is ascribed to a supervisor, the employer may also raise the affirmative defense established by the Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ("*Ellerth/Faragher* defense"). Under this defense the employer will prevail if it can show by a preponderance of the evidence that: (1) it exercised reasonable care to prevent and promptly correct any harassment and (2) the plaintiff employee unreasonably failed to take advantage of preventive or corrective opportunities offered by the employer or to otherwise avoid harm. *Watts v. Kroger Co.*, 170 F.3d 505, 509–10 (5th Cir. 1999). Performance moves for summary judgment on Wallace's hostile environment claim, asserting that she has not established sufficiently severe or pervasive conduct and that it can satisfy both prongs of the *Ellerth/Faragher* defense.

**1. Severe or pervasive conduct**

On the severity element, an employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). "Workplace conduct is not measured in isolation" and "all of the circumstances must be taken into consideration." *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 651 (5th Cir. 2012). Because Title VII is "only meant to bar conduct that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace," courts have set a high standard for determining what constitutes a hostile work environment. *Lewis v. M7 Prods., LLC*, 427 F.Supp.3d 705, 720 (M.D. La. 2019) (internal quotation omitted). The conduct must be both subjectively and objectively offensive, meaning that the victim perceived the environment as hostile or abusive and that a reasonable person would do likewise. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Courts examine such a claim based on the totality of the circumstances, looking to the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it "unreasonably [interfered] with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007). "No single factor is determinative." *WC&M Enters., Inc.*, 496 F.3d at 399.

Here Wallace testified that: (1) superintendent Luke Terro asked on two or three occasions to touch her breasts and on one occasion in June 2017 texted her a picture of his penis, asking her to respond with a picture of her chest [doc. 30, att. 2, pp. 16–18]; (2) foreman Charles Casey repeatedly told her that she could not work on the rack because she had "tits and an ass," which precluded her from wearing the harness, and stated one time in her hearing that he could use a "bucket of blowjobs" [*id.* at 8, 21]; and (3) coworker

8

Charles Laprarie made comments to Wallace on one occasion in June 2017 about being "in his sexual prime" when he was her age and shortly thereafter walked up behind her and began massaging her shoulders [*id.* at 20].

As Performance notes, the Fifth Circuit has found that sexual harassment is insufficiently severe or pervasive under Title VII even when there is occasional physical contact, direct involvement by supervisors, and lewd talk. *See Gibson v. Potter*, 264 F.App'x 397 (5th Cir. 2008) (one-time groping and lewd comments by supervisor); *Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871 (5th Cir. 1999) (repeated lewd comments and unwanted touching by coworker). However, in cases involving the relatively recent phenomenon of sending a sexually explicit picture by cell phone and more closely reflecting contemporary workplace norms, district courts have denied summary judgment to the employer where the hostile environment claim is supported by that conduct along with other harassing behavior. *See, e.g.*, *Robertson v. FinPan, Inc.*, 2021 WL 2534174 (S.D. Ohio June 21, 2021) (sexually explicit photo, circulation of pornography and lewd cartoons at office, and disparaging sexual references to plaintiff and to female customers); *Brooks v. FedEx Supply Chain, Inc.*, 2021 WL 1381222 (S.D. Ill. Apr. 21, 2021) (sexually explicit photo along with inappropriate touching and frequent unwanted sexual comments over a period of 16 months); *Smith v. Ergo Sols., LLC*, 2019 WL 147718 (D.D.C. Jan. 9, 2019) (sexually explicit photo along with repeated groping, sexual remarks, and an attempt to kiss one plaintiff). The other conduct Wallace describes is less severe than that at issue in some of these cases. Still, and especially in light of Terro's alleged behavior, there is enough to possibly persuade a jury

that the total amount of harassment alleged could have affected a term or condition of her employment.

## 2. *Ellerth/Faragher* defense

As for the *Ellerth/Faragher* defense, Wallace maintains that it does not apply because she suffered "tangible employment actions" in the form of her suspension and termination.[2] When the employee has suffered a tangible employment action in connection with sexual harassment by a supervisor, the claim is transformed into one of quid pro quo harassment. *Casiano*, 213 F.3d at 283. The court must then examine whether the employee can show a nexus between the alleged harassment and the employment action. *Id.* If he cannot, then the employer is not liable. *Id.*

The admissible evidence[3] shows that Wallace only complained about Laprarie during her employment at Performance, and did not expressly object to, report, or otherwise complain of the incidents involving Terro or Casey.[4] Doc. 21, att. 4, pp. 31–32, 35–40. As described below, Wallace was suspended in August 2017 and then terminated when she failed to report after her suspension (though she had already submitted a letter of resignation).[5] While it is Terro's signature on the employee warning and separation notice,

---

[2] She also claims the "de facto demotion" she suffered as a result of not being allowed to work on the rack, supra. Under this analysis, a "tangible employment action" is limited to "an official of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761–62. As shown above, Wallace's allegations with regard to the rack do not meet this standard.

[3] See note 7, infra, relating to inadmissibility of exhibit showing letter

[4] Though Wallace's complaint indicates that "consistently and repeatedly" rejected sexual advances made by Terro, she only testified that she ignored Terro's picture and that he spoke to her less as a result. Doc. 1, p. 6; doc. 30, att. 2, p. 18. She also testified that supervisors informed her shortly after she complained about Laprarie that he would be disciplined and transferred to another area or crew, but Lathat to her knowledge the only consequence he received was having a supervisor pull him aside to talk about the incident the next day. Doc. 21, att. 4, pp. 37–38.

[5] Laprarie left the project on July 22, 2017. Doc. 21, att. 3, p. 63. His conduct is not relevant to this analysis because he was a coworker and not a supervisor.

Area Manager Matthew Gautreau provided a declaration stating that he directed Terro to take these actions after noting Wallace's frequent unexcused absences. Doc. 37, att. 2. Though her suspension came roughly two months after she received Terro's picture, Wallace can show no nexus between any employment action and the alleged harassment by her supervisors when she made no objection to the harassers themselves, let alone to the person who took the employment actions in question. Accordingly, Performance is entitled to summary judgment on this claim if it can satisfy the *Ellerth/Faragher* defense by showing that (1) it exercised reasonable care to prevent and promptly correct any harassment and (2) Wallace unreasonably failed to take advantage of preventive or corrective opportunities offered by Performance or to otherwise avoid harm.

Wallace maintains that Performance cannot satisfy the first prong because her alleged harassers were themselves supervisors and their knowledge can be imputed to the company. In this regard, Wallace appears to confuse the affirmative defense with the final element of the prima facie case, which requires an allegation that the employer knew of the harassment and failed to take remedial action. *See Sharp v. City of Houston*, 164 F.3d 923, 929–30 (5th Cir. 1999). The *Ellerth/Faragher* defense applies only to claims of harassment involving "supervisors," which are defined for that purpose as employees "empowered . . . to take tangible employment actions against the victim[.]"[6] *Vance v. Ball State Univ.*, 570

---

[6] Wallace has submitted evidence in the form of deposition testimony and her own separation notice, signed by Terro, indicating that at least Terro as superintendent had the authority to terminate and discipline and that Casey, as general foreman, could have a role in that process as well. *See* doc. 30, att. 3, p. 3; doc. 30, att. 4, p. 18; doc. 30, att. 12. Perplexingly, Performance switches gears in its reply and argues that this evidence was insufficient and that Terro and Casey lacked authority to qualify as supervisors. Doc. 37, pp. 10–11. It produces no evidence to this end, however, and the court finds that a preponderance of the record evidence establishes that both individuals had authority to make decisions affecting the terms and conditions of Wallace's employment.

U.S. 421, 431 (2013). It would make little sense to then invalidate the defense at the first prong for every supervisor.

Instead, Performance has shown that it had in place anti-harassment/discrimination policies and practices, which were communicated to Wallace at hiring. *See* doc. 21, att. 3, pp. 23–27. Under these policies, sexual harassment is expressly forbidden and employees are directed to report any instances to Human Resources. *Id.* at 23–24. The second prong of the *Ellerth/Faragher* defense is satisfied by evidence that an employee had a comprehensive complaint/reporting system for sexual harassment at her disposal and failed to take advantage of it. *See, e.g.*, *Giddens v. Community Educ. Centers, Inc.*, 540 F. App'x 381, 389 (5th Cir. 2013). As noted supra, Wallace has admitted that she did not avail herself of these procedures. She testified that she did not see any point in reporting to Human Resources, because her complaints involved supervisors, but she also identified at least two individuals she could have complained to who outranked Terro and Casey. Doc. 30, att. 2, pp. 37–38. These explanations do not provide a reasonable basis for failing to take advantage of the company's sexual harassment reporting system. Accordingly, Performance has shown that it is entitled to the affirmative defense and summary judgment must be granted on this claim.

## C. Retaliation

To establish a prima facie claim of retaliation the plaintiff must show that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse action against her; and (3) there is a causal link between the two. *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). The burden next shifts to the defendant to

produce evidence of a legitimate, non-retaliatory reason for the adverse employment action, and then back to plaintiff to show that defendant's reason is pretextual. *Septimus v. Univ. of Houston*, 399 F.3d 600, 607 (5th Cir. 2005). Wallace's claim rests on her complaints of the alleged harassment described above as well as her repeated requests to work at elevation. Because she has admitted, however, that she did not voice any objection to Terro or Casey's conduct before her suspension[7], the court will analyze this claim in terms of Laprarie's alleged conduct (that he had massaged her shoulders and made a comment about being in his "sexual prime" at her age) as well as Wallace's dissatisfaction with her job duties, which she testified that she opposed with requests to supervisors to be allowed to work at elevation. Performance moves for summary judgment on this claim on the grounds that Wallace cannot satisfy the first prong of her prima facie case or, alternatively, that it can show a legitimate reason for the adverse action because Wallace's record of absenteeism was well-documented and justified the suspension.

Under Title VII's anti-retaliation provisions, "protected activity" includes "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42

---

[7] In support of her opposition Wallace submits Exhibit T, which she describes as a draft of the resignation letter she sent to Human Resources in August 2017, after her suspension. *See* doc. 30, att. 21. There Wallace complains in detail about the sexual harassment and discrimination she suffered at Performance. *Id.* In her opposition, Wallace contends that the letter shows that Performance was aware of the totality of her complaints at the time it took an adverse employment action by terminating her in September 2017. Doc. 30, pp. 51–52.

Performance objects to the exhibit on the grounds that it is unauthenticated. Doc. 37, p. 6. On a motion for summary judgment, "[a] court may not consider hearsay or unauthenticated documents." *Corbin v. Sw. Airlines, Inc.*, 2018 WL 4901155, at *5 (S.D. Tex. Oct. 9, 2018). The exhibit draft is undated and Wallace has provided no affidavit to authenticate it. Furthermore, she admitted in her deposition that it was merely the "rough draft" of her resignation letter. Doc. 30, att. 2, p. 33. Finally, the court regards Wallace's suspension as the relevant adverse employment action. Her termination admittedly came **after** she had resigned from the company. While the company claimed to have never received the resignation letter, Wallace admits that she did not show up for another shift after her suspension. Accordingly, Exhibit T cannot be considered on this motion and would not rescue Wallace's claim even if she could authenticate it.

U.S.C. § 2000e-3a. The plaintiff need not show that the conduct she opposed rose to the level of a Title VII violation, but she "must at least show a reasonable belief that it did." *Taliaferro v. Lone Star Implementation Co.*, 693 F. App'x 307, 310 (5th Cir. 2017) (quoting *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 237 (5th Cir. 2016)). In determining what constitutes a "reasonable belief," the court looks to the frequency and severity of the conduct as well as the context in which the employee opposed the conduct. *Id.* (citations omitted). Harassment complaints arising from isolated incidents are usually insufficient to support a reasonable belief. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269–71 (2001) (employee reported two coworkers for chuckling over a sexually suggestive comment in an application file they were reviewing); *Satterwhite v. City of Houston*, 602 F. App'x 585, 586 (5th Cir. 2015) (employee complained after coworker said "Heil Hitler" during a meeting). However, the Fifth Circuit has affirmed summary judgment on a harassment claim arising from a single joke about condoms told by a supervisor in the plaintiff's presence but reversed same for the retaliation claim arising from the employee's complaint about that joke and subsequent discharge. *Long v. Eastfield College*, 88 F.3d 300, 308–09 (5th Cir. 1996); *see also Rite Way Serv., Inc.*, 819 F.3d 235, 243–44 (5th Cir. 2016) (reversing summary judgment on retaliation claim where complaining employee witnessed supervisor pretend to spank a coworker and tell the coworker he was admiring her rear end); *Cuellar v. Southwest Gen. Emergency Physicians PLLC*, 656 F. App'x 707 (5th Cir. 2016) (reversing dismissal of retaliation claim from supervisor's statement that he would spank an employee if she misbehaved).

Here, it is clear that Laprarie's conduct alone was neither severe nor pervasive enough give rise to a sexual harassment claim under Title VII. The fact that he was not in a supervisory position over Wallace and the limited duration of his alleged harassment also detract from the reasonableness of any belief that his behavior was actionable. Wallace's contemporaneous complaints about limitations on her job duties could help elevate her grievances to the reasonable belief standard. However, she admitted that she only voiced "general gripes" about not being allowed to work in the rack and being assigned duties like sweeping—**not** that she alleged that her job duties were being constrained because of her sex. Doc. 30, att. 2, p. 33. Wallace did not provide sufficient information for anyone at Performance to determine that this grievance was based on allegations of illegal sex discrimination. Accordingly, she cannot meet the first element of her prima facie claim and Performance is entitled to summary judgment.

### D. Constructive Discharge

Finally, Performance argues that Wallace's constructive discharge claim must be dismissed because she (1) failed to prove that she resigned before being fired and (2) cannot show that the conditions of her employment were so intolerable as to mandate her resignation. The court notes that Wallace raised a separate claim of constructive discharge in her EEOC charge, but only wove these allegations into her harassment and retaliation claims in the matter at hand. Under the hostile environment claim, there is no need to address the allegation because Performance has shown that it is entitled to summary judgment based on the *Ellerth/Faragher* defense. Under the retaliation claim, the court has rejected Wallace's draft resignation letter as improper summary judgment evidence. *Supra*,

15

note 7. The issue of whether Wallace was fired or quit is only relevant under that claim as it relates to whether the company had notice of her other complaints at the time, and the rejection of her draft letter as evidence moots the issue. Accordingly, these arguments require no further ruling.

## IV.
### CONCLUSION

For these reasons, the Motion for Summary Judgment [doc. 21] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on this 12th day of July, 2021.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**